## Richmond.

### HOLLOMAN v. COMMONWEALTH.

#### January 17, 1924.

LARCENY—*Receiving Stolen Goods—Evidence Sufficient to Support Verdict and Judgment in Supreme Court of Appeals.*—In the instant case, a prosecution for purchasing an automobile, knowing it to have been stolen, the principal witness for the Commonwealth was the thief, who was also a bootlegger. This witness testified that he had an agreement with defendant to steal an automobile and sell it to him for thirty-six gallons of whiskey, and that defendant knew that the car in question was stolen when he bought it and paid for it with whiskey. This witness was corroborated as to the sale and payment with whiskey by another bootlegger, who accompanied him. In one particular it was manifest that the story told by the prosecuting witness was not true, and there were also other inconsistencies in his testimony. Defendant denied that he knew that the car was stolen and denied the details of the transaction as testified to by the prosecuting witness, saying that cash was paid for the car, and was corroborated as to these details by several other witnesses. There was evidence as to the good character of the defendant for truth and veracity, and as a law-abiding citizen. The jury, however, had the right, in addition to the other testimony, to take into consideration the fact that the sale was made about eight o'clock at night; that it was made by a stranger; that it was at a very reduced price; and that the automobile carried no license tag.

*Held:* That the case was one for the jury, whose verdict of guilty had been approved by the trial court, and that under sections 6251, 6363, Code of 1919, the judgment must be affirmed.

Error to a judgment of the Circuit Court of Sussex county.

*Affirmed.*

The opinion states the case.

*W. Stanley Burt,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D., Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called the defend-ant, was convicted of purchasing an automobile of the value of $300.00, knowing it to have been stolen, and sentenced to the penitentiary for one year. There are four assignments of error, but three of them are not of such character as would, under the circumstances, warrant a reversal if sustained. The fourth is that the ver-dict is contrary to the law and the evidence, and without evidence sufficient to sustain it.

There is abundant testimony to sustain the verdict if the jury believed the witnesses for the Commonwealth. The automobile was a Ford car, which had been used about nine months and worth $600.00 when stolen. It was taken from the curbing in front of the Westmore-land club, in the city of Richmond, and sold to the de-fendant in Sussex county. It was fully identified by the engine number and otherwise. The Commonwealth re-lied chiefly on the testimony of two "bootleggers," Kins-ton and Gary, both of whom had been convicted of vio-lating the prohibition law (Laws 1918, chapter 388), and one of whom (Kinston) admitted that he had stolen four automobiles, including the one sold to the defend-ant, and was then in jail and under indictment for such stealing.

Kinston testified that he had an agreement with the defendant to steal an automobile and sell it to him for thirty-six gallons of whiskey; that he stole the auto-mobile in controversy and carried it to Sussex county and exchanged it with one Adkins, to whom he had

formerly sold another stolen car, for the latter car; that one Gary (the other bootlegger) accompanied him in another car; that he, Gary and Adkins, then drove to the defendant's home and there delivered the car he had gotten from Adkins to the defendant; that the defendant and several others who were present went some little distance into the bushes and brought back and delivered the whiskey to him; that the defendant helped to load the whiskey in the car driven by Gary; that he gave the defendant a receipt for $250.00 for the car; that he and Gary then drove back to Richmond, and that the defendant knew that car was stolen when he bought it. Gary testified to going on the trip with Kinston to the defendant's house, and while he stated that he did not hear anyone say anything about trading an automobile for whiskey, nor see any money paid or receipt given, he also stated that the defendant helped to load six cases of whiskey in the car witness was driving, and that "he and Kinston returned to Richmond, leaving the other car." He further testified that he heard the defendant say that the whiskey was his.

The defendant, as a witness in his own behalf, denied every material statement made by these two witnesses. He testified that Julius Adkins, whom he had known for many years, told him that Kinston was running a garage in Richmond, and had to sell cars to get money due him for repair work, and he could buy one cheap, and he told Adkins that he would buy one; that subsequently, in March, 1922, Adkins came to his house with Kinston about seven or eight o'clock in the evening, and he bought the car from Kinston; that there was another man named Gary who came with Kinston and Adkins, and was driving another Ford car; that there was some discussion about the price, but Kinston asked $250.00 for the car; that he finally told Kinston that he did not

have the money just then; that he only had $65.00; that
his brother, McKinley Holloman, offered to lend him
$35.00; and they all got into one of the cars and went to
the house of another brother, Douglas Holloman, about
a mile and a half away, who loaned him $150.00, and
thus the $250.00 was raised, which he paid Kinston for
the car and took his receipt for it; that there was some
controversy over the form of the receipt, and the de-
fendant testified that Kinston agreed to return the next
day and have a proper receipt prepared by a justice of
the peace or other proper officer; that nothing was said
which aroused his suspicion or led him to think that the
car had been stolen; that the car had no license tag on
it when he bought it, and he did not remember what
Kinston told him about the tag, though he gave some
explanation why it was not on it; that he never had any
conversation with Kinston about trading him liquor for
the car, nor was anything said to him to lead him to
think that Kinston wanted to do anything but sell it to
him for money; that his car was taken by one Nichols
into Petersburg, without his knowledge or consent,
when Nichols was arrested for speeding, and as soon as
he ascertained that fact he went to Petersburg, carried
the receipt with him and demanded his car; that he was
advised to go to Richmond to the office of the Secretary
of the Commonwealth and find out about the car; that
he went to Richmond and was told that the car had been
stolen; that he then went to the jail with an officer and
saw Kinston and talked with him about it, and that
Kinston was then arrested for stealing automobiles;
that defendant was also subsequently arrested for buy-
ing a stolen car from Kinston.   He denied that he traded
liquor for the car or helped to load liquor in the car, nor
did he ever say that the liquor was his, as testified to by
Gary.

McKinley Holloman, a brother of the defendant, was present when Kinston and others came to defendant's house and went with them to the house of Douglas Holloman to borrow the $150.00. McKinley Holloman confirms everything that was said by the defendant with reference to what transpired about lending the money to purchase the automobile for cash and taking a receipt for it. He also testified that nothing was said in any of the conversation which would lead him to think that the car was stolen, but he was led to think from the conversation that Kinston was running a garage in Richmond and was selling the car to get some money out of it owing to him for repair work.

Douglas. Holloman, another brother of defendant, confirms the statement of defendant with reference to the loan of the $150.00, payment of the money to Kinston, and the taking of the receipt; and further said that nothing was said about trading the car for liquor, and that all of the talk was about money, and there was nothing about the matter to cause any suspicion that Kinston had stolen the car.

Another witness, Alexander Richardson, was present at the defendant's house when the parties came there with the car, and confirms the statements of defendant as to what transpired there about the borrowing of $35.00 from McKinley Holloman, and sale of the car at $250.00. He stated that he heard all of the conversation that took place at the defendant's house, and there was nothing said which would lead one to think that the car had been stolen. The constable and a justice of the peace of Sussex county testify to the good character of the defendant for truth and veracity, and as a law-abiding citizen. While other details of the transaction appear in the testimony, it is not deemed necessary to give them, as the foregoing statement contains the salient facts of the case.

As the automobile found in the possession of the defendant was fully identified as the one stolen from the front of the Westmoreland club, it is manifest that the story told by Kinston as to the exchange made with Adkins in Sussex was not true. There were also some other inconsistencies in his testimony. The jury, however, had the right, in addition to the other testimony, to take into consideration the fact that the sale was made about eight o'clock at night; that it was made by a stranger; that it was at a very reduced price; and that the automobile carried no license tag. The case was one for the jury, whose verdict has been approved by the trial court, and with that judgment we cannot interfere. Code, sections 6251, 6363.

*Affirmed.*